## BALTIMORE & O. R. CO. v. GROEGER.

(Circuit Court of Appeals, Sixth Circuit. April 13, 1923.)

No. 3775.

1. **Evidence ☞570—Expert testimony on ultimate question of fact not controlling.**

Expert testimony in reference to the ultimate question of fact for the determination of a jury is not controlling, and notwithstanding such evidence remains one for the jury.

2. **Master and servant ☞285(7)—Cause of explosion of locomotive boiler held question for jury.**

Whether the explosion of a locomotive boiler was caused by the manner in which it was operated, or by its defective condition, *held*, under the evidence, a question for the jury.

3. **Master and servant ☞286(12)—Negligence in failing to equip boiler with fusible plug held question for jury.**

Whether failure of a railroad company to equip the boiler of a particular locomotive with a fusible plug was negligence *held*, under the evidence, a question for the jury.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

288 F.—21

**4. Master and servant** ⊙≈110—**Railroad responsible for use of locomotive with unsafe boiler.**

Under the general provision of Boiler Inspection Act Feb. 17, 1911, § 2 (Comp. St. § 8631), making it unlawful for any carrier subject to the act to use any locomotive engine, unless the boiler is in proper condition and safe to operate without unnecessary peril to life or limb, the fact that the Interstate Commerce Commission has not by rule or order covered every feature of construction does not relieve a railroad company from responsibility for using a locomotive with a defective and unsafe boiler.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Freda Groeger, administratrix of the estate of John C. Groeger, against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On the morning of September 3, 1920, a freight engine belonging to the Baltimore & Ohio Railroad Company, and engaged in the transportation of interstate traffic, exploded near Proctor, W. Va., killing John C. Groeger, the engineer in charge of the engine, the fireman, and the head brakeman, who constituted the engine crew at the time of the explosion. Freda Groeger, as administratrix of the estate of John C. Groeger, deceased, brought an action in the District Court against the Baltimore & Ohio Railroad Company to recover damages, under the federal Employer's Liability Act (Comp. St. §§ 8657–8665), for wrongfully causing the death of her intestate.

The amended petition alleges several specific acts of negligence, two of which the trial court took from the jury because they were unsupported by any evidence. The others, being related to the same subject-matter, the court consolidated into two, which in substance are as follows: (1) In permitting a dangerous condition to exist in the engine. (2) In failing to equip this boiler with a fusible plug. The answer of the defendant admitted the formal averments of the petition and denied each and every other allegation therein contained.

At the close of plaintiff's case, and again at the close of all the evidence, the defendant moved for a directed verdict, which motions were overruled by the court and exceptions noted. Exceptions were also taken by the defendant to certain rulings of the court and to specific parts of the court's charge to the jury. The jury returned a verdict for the plaintiff. A motion for new trial was overruled, and judgment entered upon the verdict.

W. T. Kinder, of Cleveland, Ohio (Tolles, Hogsett, Ginn & Morley and J. P. Wood, all of Cleveland, Ohio, on the brief), for plaintiff in error.

E. C. Chapman, of Cleveland, Ohio, for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). It is contended upon the part of the plaintiff in error that this verdict is not sustained by any substantial evidence. It is provided by rule 25 of the Interstate Commerce Commission that:

"No boiler shall be allowed to remain in service when there are two adjacent staybolts broken or plugged in any part of the firebox or combustion chamber, nor when three or more are broken or plugged in a circle 4 feet in diameter, nor when five or more are broken or plugged in the entire boiler."

The uncontradicted evidence establishes the fact that at and prior to the time this boiler exploded there were seven staybolts broken—

⊙≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one staybolt at the forward part of the crown sheet; three intermediate stays on the right side of the crown sheet within a radius of 16 inches, two of which were adjacent; and three on the left side, two of which were within 8 inches of each other, and the third within 12 inches of the other two.

The operation of this engine with these broken staybolts was in violation of rule 25 of the Interstate Commerce Commission, in that more than five bolts were broken; in that two of these broken bolts were adjacent; in that three of these bolts on the right side of the boiler were within a radius of 18 inches and three on the left side of the boiler within a radius of 8 inches. It is claimed, however, on the part of the plaintiff in error that there is no evidence whatever that these broken staybolts contributed in any way to the explosion, but, on the contrary, that the testimony of experts tends to prove that they contributed in no way whatever to the tear of the crown sheet and the consequent explosion of the boiler.

[1] Expert evidence in reference to the ultimate question of fact for the determination of a jury may be helpful, but is not controlling. Notwithstanding this expert evidence, the question was one for the jury to decide, from all the evidence, whether these broken staybolts caused or contributed to the explosion. That question was properly submitted to the jury by the trial court.

Wholly apart from these broken staybolts, there is sufficient evidence in this record as to the defective condition of this engine in other respects to sustain the verdict of the jury.

It is claimed on behalf of the plaintiff in error that the explosion of this engine was caused by low water. There is evidence in this record tending to prove that the boiler was in a leaking condition; that "it was leaking up around the front and the side—the fire was dead; and that when the door of the fire box was open the steam came out with a gush."

There is also evidence tending to prove that the engine took water at Foster's Tower, about three miles from the place where it exploded, that water was supplied from the tank to the boiler by two injectors, and that at Foster's Tower both of these injectors were working. If it were conceded that low water caused this explosion, the natural inference from this evidence would be that the engine was in such a defective and leaky condition that water could not be supplied fast enough by these two injectors to keep the crown sheet covered, although it appears from the testimony of the railroad company's master mechanic that with one injector working the water would be kept above the crown sheet in the normal operation of the locomotive. The evidence also tends to prove the defendant was fully advised of the defective condition of this engine. When the train was at Moundsville, Groeger, the engineer, notified the defendant's train dispatcher that he was afraid of this engine and asked to be relieved of it, but the dispatcher ordered him to continue its use.

[2] It is claimed, however, that this explosion was due solely to the manner in which this engine was operated and not to any defects therein; that if the water was low in this engine the engineer could

readily have discovered that fact from the water glass and gauge cocks; and that as soon as the water became dangerously low it was his duty to stop the engine and draw the fire.

The presumption obtains that Groeger was exercising due care for his own safety. This presumption is strengthened by the evidence that he knew the engine was in such a defective condition that he was afraid of it and asked to be relieved from using it. There is no direct evidence in this record that he was negligent in any respect. Nor does the inference that he was negligent necessarily follow from the facts admitted or proven in this case. It was therefore a question for the jury to determine whether this explosion was caused by the manner in which it was operated or by its defective condition in one or more of the particulars in which the evidence tends to show it was defective.

[3, 4] It is also claimed on behalf of the plaintiff in error that the court erred in submitting to the jury the question whether the failure to equip with a fusible plug was a violation of the Safety Appliance Act (Comp. St. § 8605 et seq.), for the reason that is a question to be determined by the Interstate Commerce Commission. That Commission has made no rule or order in reference thereto other than rule No. 14, which reads as follows:

"If boilers are equipped with fusible plugs, they shall be removed and cleaned of scale at least once every month. Their removal must be noted on the report of inspection."

The fact, however, that the Interstate Commerce Commission has made no order requiring boilers to be equipped with these plugs is, by no means conclusive of the question. It was said by the Supreme Court in Railway Co. v. Donaldson, 246 U. S. 121, 128, 38 Sup. Ct. 230, 233 (62 L. Ed. 616, Ann. Cas. 1918C, 581):

"We find nothing in the Boiler Inspection Act to warrant the conclusion that there is no liability for an unsafe locomotive, in view of the provisions of section 2 of the act, because some particular feature of construction, which has been found unsafe, has not been disapproved by the federal boiler inspector."

Section 2 of the Boiler Inspection Act (Comp. St. § 8631) provides that it shall be unlawful for any common carrier subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic, unless the boiler of the locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put without unnecessary peril to life or limb. While the Interstate Commerce Commission is authorized to make rules and orders in furtherance of the enforcement of this law, nevertheless its failure to make a rule or an order covering every defective condition or construction within the meaning of section 2 of the Boiler Inspection Act by no means relieves the carrier from complying with the provisions of that section.

This issue was presented by the pleadings, but it is claimed on behalf of plaintiff in error that the weight of the evidence directed to that issue, establishes the fact that fusible plugs are not in general use by railroad systems; that they have never been accepted and used by master mechanics and locomotive engineers as standard equipment in locomotive service; that while fusible plugs present an element of

safety, and would probably have prevented the explosion in this case, nevertheless they accumulate scale on the top of the plug, and this permits the plug to heat, so that the soft metal will melt and run out, causing the engine to fail in service on the line, and that sometimes this results in injury to the fireman, if he should be firing just at the time the soft metal runs out of the plug, permitting the steam to blow the fire and hot cinders out of the door of the firebox; and that the presence of a fusible plug tends to negligence on the part of the engineer in failing to keep sufficient water in the engine.

There is, however, substantial evidence in this regard tending to prove that fusible plugs are extensively used; that they may be rounded at the top, so that the scale will not accumulate thereon; that they are generally recognized as effective and reliable means for preventing boiler explosions from low water; and that if this engine had been equipped with a fusible plug this explosion would not have occurred, regardless of the other claimed defects. Upon this state of the proof, it was the duty of the court to submit this issue to the jury. This, court has no authority to consider or determine the question of the weight of the evidence.

If, however, it were conceded that there is no substantial evidence in this record tending to prove that section 2 of the Boiler Inspection Act requires that boilers generally should be equipped with a fusible plug, nevertheless the presence or absence of a fusible plug in this particular boiler was an important fact to be considered by the jury in determining whether this boiler, defective in other particulars, was or was not unsafe to operate in the movement of this train, transporting goods and merchandise in interstate commerce. There is substantial evidence in this record tending to prove that this boiler was defective in the particulars heretofore mentioned; that, regardless of these defects, it might have been entirely safe to operate, if it had been equipped with a fusible plug; but without such plug these defects would render it unsafe and dangerous to operate, and unnecessarily imperil life and limb.

While the evidence does not disclose the information given to the train dispatcher by the engineer, Groeger, when he asked to be relieved of this engine, as to the nature and extent of the defects, nevertheless the train dispatcher was advised that, in the opinion of the engineer in charge, the engine was defective and dangerous. It was his duty to obtain full information in reference to these defects before ordering and directing that its use be continued for the balance of the trip. Whether he did this or not, the defendant must be held to have had knowledge of these particular defects, and also knowledge that this engine was not equipped with a fusible plug, which, under the proofs of this case, would not only have mitigated the danger from these defects, but would have actually prevented the explosion.

In determining whether this particular boiler was then safe to operate in the service of the carrier in moving traffic, without unnecessary peril to life or limb, it was proper for the jury to take into consideration, in connection with the other evidence tending to prove its defective condition, the fact that this boiler was not equipped with a

fusible plug. That being true, the charge of the court on this subject could not have been prejudicial to defendant.

For the reasons stated, the judgment of the District Court is affirmed.