CHARLES F. RILEY v. WABASH RAILWAY COMPANY, Appellant.—44 S. W. (2d) 136.

Division Two, October 1, 1931.

*Dudley & Brandom, S. J. Jones* and *Homer Hall* for appellant.

912

*L. B. Gillihan* and *Miles Elliott* for respondent.

WESTHUES, C.—This is an action for damages for personal injuries, alleged to have been received by plaintiff on January 1, 1926, while both plaintiff and defendant were engaged in interstate commerce, and while plaintiff was employed as fireman on one of defendant's passenger locomotives, hauling a passenger train from St. Louis, Missouri, to Omaha, Nebraska, resulting from stepping upon a clinker hook, placed on top of the engine tender, when plaintiff went upon the tender to supply the engine with water, at White Cloud, Iowa. The jury returned a verdict in favor of plaintiff, and assessed his damages at the sum of thirty thousand dollars. Defendant appealed.

The evidence submitted on behalf of plaintiff warrants the finding that, on January 1, 1926, the steam locomotive, on which plaintiff was fireman, reached White Cloud, Iowa, about seven A. M. The train, pulled by said locomotive, originated at St. Louis, Missouri, and was destined for Omaha, Nebraska, arriving there about eight A. M. on January 1st. Stanberry, Missouri, was a division point, and this locomotive, Wabash No. 641, was attached to the train there.

Plaintiff had been in the employ of defendant for three different periods, five, two and eight years, respectively, as fireman. The eight-year period continued to the time of his injury. On this

particular morning, the engine had been placed, equipped and ready for service, on the go-out track, to attach to the train leaving Stanberry at four-ten A. M. Engine No. 641 had just been overhauled at Moberly, and the trip made that morning was its first subsequently thereto. A clinker hook was within the equipment, and on this morning, at the time of plaintiff's injury, was lying on the tender, about the middle of the water tank, back of the coal bin. The tender or coal car was attached to the rear of the engine. The purpose of the forepart of the tender was the storage of coal. That of the rear part, the storage of water, supplied at water tanks along the route. A manhole, protected by a cover, permitted the flow of water into the storage tank. A hook, one-half inch in diameter and about five feet in length, was provided to bring the water spout of the outside water tank in juxtaposition to the manhole. This was kept between the manhole and the rear of the tender. On this tender, there was a drop of two feet or more from the coal bin to the roof of the water tank. However, there was provided an oaken step, attached to the coal bin and held up at each corner by small iron posts, to permit passage from the coal bin to the roof of the water tank. The step was placed about midway between. The step, about an inch thick, had a tread of about a foot and extended along the coal bin two feet or more. In proceeding from the engine to the roof of the tank on the tender, one had to climb over the coal in the bin to the oaken step, and then on to the tank. It was the fireman's duty at water tank stations to provide the tender tank with water. During the dark hours, a torch was provided to provide light. At Maryville, Missouri, prior to the arrival at White Cloud, plaintiff, using a torch to see, had let water into the tank of the tender. He did not at that time observe the clinker hook.

On arrival at White Cloud, plaintiff, in the course of his duties, proceeded to the roof of the tender's water tank, to permit the water to flow in. Carrying a torch, he stepped onto the oaken step and then onto the tank, when his foot came in contact with the clinker hook on the roof of the tank, causing him to fall. At this time it was cloudy and pretty dark. Plaintiff did not see the clinker hook until after he stepped on it, nor did he touch it except as he stepped on it. As he proceeded down on the tender tank, he stepped on the clinker hook, lying loose on the top or the deck of the tank, stepping about on the middle of the clinker hook, whereupon it rolled, causing him to fall and strike his back to the right of the spine on the right-hand corner of this step. After taking water, he went over the tank and the coal to the engine cab.

The clinker hook was eight or nine feet in length and about an inch in diameter. At one end were two prongs, about four inches in length, and at the other a ring, about four inches across. When

the prongs were up or down, the ring stood on edge. It was used to remove clinkers or cinders from the grate and for removing or putting out the fire, but it was seldom or of no use. when the train was running.

For many years, according to plaintiff's witnesses, it had been the custom of defendant to carry clinker hooks on two hooks provided for that purpose, located on the sill of the tank on the left and outside of the tender, just above the trucks. During the last eight years of service as fireman in the employ of defendant, plaintiff had never known a clinker hook to be carried on the top of the tank of a Wabash engine. Prior to this particular trip and the overhauling of this engine, the clinker hook, on engine No. 641, had been carried on hooks, located on the sill of the tank on the outside, just above the trucks.

Stanberry was a terminal of defendant, maintaining a round-house force. On the cross-examination of plaintiff, defendant was permitted by the trial court to introduce in evidence an agreement between defendant and the engine men, which included plaintiff, to the effect that "road engine men will be given not less than twenty minutes undisturbed time to prepare engine;" that "engines will be placed on go-out track in proper condition to go out on run, provided with necessary tools, supplies and equipment, but this does not relieve engine men from knowing that engine is properly equipped or reporting shortage before going out;" that "engine men will not be required at places where. roundhouse force is maintained to set up wedges, fill grease cups and clean headlights, neither will they be required to place on or remove tools or supplies from locomotives . . . but are required to make proper report of any of this work requiring special attention." The rules of defendant provide: "Fireman. Before starting on each trip they must jointly with engine man see that their engines are provided with signals, supplies, flags, fusees, lamps, and torpedoes required for the protection of the front of their train, and that all signal equipment is in proper condition and ready for use."

Plaintiff testified that it was the duty of the hostler and his helper to know that the engine had the proper tools and equipment and water in the tank when starting out, and that it was not his duty, and that he would not be responsible in any way. However, he was responsible for putting water in the tank while on the road, at Maryville and White Cloud.

Plaintiff said that he first noticed that engine 641 did not have hooks on the outside at Council Bluffs roundhouse after the accident; that it was not the duty of the fireman to know that the engine had proper equipment on it, because the engine is ready for service when placed on the go-out track, and that he did not pay any at-

916

tention as to whether a clinker hook or water spout hook was on it, for they are supposed to be there. It was the custom of railroads to provide hooks on the sill of the tank, just above the trucks, on which to hang the clinker hook.

*Defendant's evidence.* As testified to by both the inspector and the engineer, the clinker hook was found, when the engine arrived at Council Bluffs, on the roof of the tender tank just back of the coal board and under the step. A number of railroad men, familiar with the duties of firemen and the equipment of locomotives and tenders, testified clinker hooks were carried on top of the tank. Clinker hooks were carried on top of the tender tank on all of defendant's locomotives, except a few operating from the Stanberry terminal, but on these there were no hooks provided for clinker hooks prior to plaintiff's injury. There were hooks on the side of the tanks, placed there to carry chains. Witnesses for defendant testified that in their opinion it was reasonably safe to carry clinker hooks on top of the tanks up against the coal board under the step, without fastening them.

A number of witnesses for defendant, on cross-examination, stated that it would be unsafe if a clinker hook was placed or laid on the tank in such a place or position as to permit a fireman, stepping off of the coal pile onto the top of the tank, to step on it. One witness testified that his railroad carried the clinker hook over against the side of the tank.

Witness Turley, defendant's master mechanic, testified "It is the practice on our railroad to comply with the Interstate Commerce Commission requirements whereby the tops of the tanks are kept clean, yes." The question answered involved a rule and practice of defendant to keep, so far as possible, the top of the tank clean and free from movable objects. On redirect examination, Turley stated that the requirement did not include clinker hooks; that he was present when Government inspectors inspected Wabash engines, and no requirement was made to remove clinker hooks from the tanks, though they were there, under the step against the coal board.

Another witness testified that, when an engine is placed on the go-out track by the hostler, the engineer and fireman may expect to have all the equipment on it; that it is the duty of the supply man to see that the tools, the firing tools, the engineer's tools, are all placed on the engine; notwithstanding, it was the duty of the fireman to know that he has the necessary tools, to look the engine over to see that they are there.

The engineer, in charge of the engine at time plaintiff was injured, in answer to defendant's question as to where the clinker hooks were carried on the engine, testified: "Well, they were always carried on the back end of the tank, up till the time they put the hooks

on the side of the tank after January 1, 1926.'' Witness further testified that, when he went upon the tender tank at Council Bluffs, the clinker hook was under the legs of this step, behind that, up next to this coal board.

One Williams, machinist and locomotive inspector for defendant at Council Bluffs, referring to Government inspectors and particularly to one, testified. ''He was very particular in inspecting on the back of the tanks, and if a clinker hook was found lying out in the middle he would give us a report on the engine, and as long as our hook laid up against our coal board or near, if it was anything near, two or three inches, that wasn't out of the way, and nothing was ever said about it.'' On cross-examination, this witness said: ''It would be improper if it was lying out in the middle of the tank; yes, sir.''

Another witness, who prepared engine 641 for the go-out track that morning, testified that he put sand, coal and water in the engine and that he saw the clinker hook on top of the tank, but that he did not remember its exact location. He did not touch it or move it or have anything to do with it.

Other facts, pertaining to the issues discussed, will be adverted to in the opinion.

This case arose while plaintiff and defendant were engaged in interstate commerce. The Federal statutes and decisions, therefore, govern with reference to the trial, the rights of plaintiff and the liability of the defendant. [45 U. S. C. A., sec. 51, and cases cited; Wabash Ry. Co. v. Hayes (Ill.), 234 U. S. 86, 58 L. Ed. 1226; Louisville, etc., Ry. Co. v. Rhoda (1917), 74 So. 19, 73 Fla. 12; Watkins v. Boston & M. Railroad, 138 Atl. (N. H.) 315.]

Defendant has briefed a number of assignments of error. The decisive questions in the case, however, are the following: 1st. Was the case properly submitted to the jury under the Federal Boiler Inspection Act? 2nd. Did the alleged negligence of plaintiff, as a matter of law, bar plaintiff's claim?

It is defendant's contention that this is a case brought under the Federal Employers' Liability Act. Again defendant contends that the facts proven do not bring the case within the Boiler Inspection Act, for the reason that there was no evidence of any defect in the tender or the clinker hook. (Section 8631, U. S. C. S., provides in part as follows:

''. . . it shall be unlawful for any common carrier, its officers or agents, subject to this act, to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service

of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for. [Feb. 17, 1911, c. 103, sec. 2, 36 Stat. 913.]''

Section 8639a, U. S. C. S., extended the application of the above section to the tender of the engine. It reads in part as follows:

''An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto, approved February seventeenth, nineteen hundred and eleven, shall apply to and include the entire locomotive and tender and all parts and appurtenances thereof. [March 4, 1915, c. 169, sec. 1, 38 Stat. 1192.]''

The substance of Sections 8631 and 8639a, supra, are now contained in a single section, U. S. C., Annotated, title 45, sec. 23.

The case was not submitted to the jury on the theory that there was any defect in the tender, or in any of the parts or appurtenances thereof, except that the clinker hook was not in its proper place. There was much evidence pro and con as to the proper place to carry the clinker hook. Practically all of the witnesses testified that if the clinker hook was lying on top of the tender tank, where plaintiff said it was lying, then it was not in its proper place and would constitute an element of danger to persons who would have occasion to be on the tank. The witnesses for the defendant testified that the proper place for the clinker hook was on top of the water tank, under the step, against the coal board. Plaintiff's witnesses testified the clinker hook should have been carried on hooks provided for that purpose, on the sill of the tender.

We think it is of little importance, under the instructions given by the court, whether the proper place to carry the clinker hook be on the side of the tank as contended for by the plaintiff, or on the top of the tank, under the step, against the coal board, as per defendant's contention. There was substantial evidence that the clinker hook was lying on top of, and about the middle of the tank, in such a position that plaintiff might, and did step on it, causing him to fall. The instruction covering this subject is as follows:

''The court instructs the jury that in carrying interstate traffic by railroad defendant railway company, acting through its officers, agents and servants, owed plaintiff Riley the duty to use, and to provide for his use, a locomotive engine and tender having all its parts and appurtenances in proper condition and safe to operate in the service to which it was put, and which might be employed in the active service of defendant railway company in moving traffic without unnecessary peril to life or limb.

"A failure (if any) to perform this duty is negligence as a matter of law.

"You are, therefore, instructed that you must find for plaintiff Riley and return a verdict in his favor if, from the greater weight of the evidence, you believe and find that on the occasion in question defendant, its officers, agents or servants, placed said clinker hook on, and permitted the same to be on, top of the tank of said locomotive tender in a loose, insecure and unsafe position and condition, and that by reason of said clinker hook being on top of said tank in such position and condition (if you so find) the said engine and tender was not in proper condition and not safe to operate in the service to which it was put, and that by reason thereof (if you so find) said engine and tender could not be employed in the active service of defendant railway company in moving traffic without unnecessary peril to life or limb, and that plaintiff's injury (if any) resulted in whole or in part from the presence of said clinker hook on top of said tank in such position and condition (if you so find the facts to be)."

The question then presented to the jury was: Did defendant violate the provisions of the Boiler Inspection Act, by furnishing the plaintiff the tender in question, with the clinker hook lying on top of the water tank in such a position as to make it an unnecessary peril to life and limb?

We have examined many of the decisions relied on by plaintiff. Those cases, where the courts held the Safety Appliance Act, or the Boiler Inspection Act, to be applicable, are cases where there was some mechanical defect in the engine, tender, or some appliance or tool appurtenant thereto, causing the injury. In the case before us, as the case was submitted to the jury, the question of whether any defect existed in any part of the tender, or in any of the tools furnished to plaintiff, was not an issue. The unsafe condition, as the case was submitted to the jury, was created by a misplacement of a necessary fireman's tool. In searching the reports for cases that might enlighten us, and be used as a guide in determining this question, we find Reeves v. Chicago, St. P., M. & O. Ry. Co., 179 N. W. (Minn.) 689. In that case the suit was brought to recover damages for the death of a switching foreman. The foreman was killed as a result of a fall, while attempting to step on a moving engine. A piece of coal on the lower step, leading up to the gangway of the engine, caused the foreman to fall. The lower court directed a verdict for defendant and plaintiff appealed. The Supreme Court of Minnesota, in disposing of the question, said:

"Two contentions are made by appellant: (1) The presence of the coal on the step was a violation of the Federal Safety Appliance

Act (U. S. Comp. St., secs. 8617-8619, 8621-8623); but, if not, its presence was prima-facie evidence of negligence.

"That the presence of a piece of coal on the step mentioned does not prove a violation of the Federal Safety Appliance Act must follow from the construction given the statute in Slater v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 178 N. W. 813. No defect was claimed in the step. The only thing that rendered it dangerous was a foreign body that had found a temporary lodgment thereon.

"(2) Plaintiff also contended that the Federal 'Boiler Inspection Act,' so called (U. S. Comp. St., secs. 8630-8639), as amended in 1915 (U. S. Comp. St., secs. 8639a-8639d), so as to 'apply to and include the entire locomotive and tender and all parts and appurtenances thereof,' and which makes it unlawful to use any locomotive engine propelled by steam power in moving interstate traffic unless the boiler and appurtenances thereof are in proper condition and safe to operate, and providing for inspection from time to time, creates a liability on the facts of this case. We think this act must be construed, as was the Safety Appliance Act, so as not to include cases where some foreign substance has found a temporary lodgment upon the appliances of the locomotive or tender, and which is not the result of the ordinary use of such instrumentalities, but came there accidentally from some unforeseen cause."

In that case, and the case of Slater v. Chicago, St. P., M. & O. Ry. Co., 178 N. W. (Minn.) 813, it was not shown that the defendant company or its agents caused the obstruction resulting in the injury. In the Slater case it was proven that a tramp was responsible for the obstruction on the running board. The tramp displaced an ice bunker cover, so that it projected above the running board, causing the plaintiff, a brakeman, to trip over it causing his injury. The court in speaking of the Safety Appliance Act had the following to say:

"It is thoroughly settled that a violation of this statute creates an absolute liability. [Burho v. Minneapolis & St. Louis Ry. Co., 121 Minn. 326, 141 N. W. 300, and the Federal cases there cited.] The question then remains: Does the fact that a trespasser surreptitiously has placed a temporary obstruction like a loose board or cover upon a running board of a railroad car show a violation of the act referred to? We think not. The running board itself was secure and mechanically perfect. There is no hint of any defect therein either as to material, workmanship, or design. The statute ought not to be construed as guaranteeing against the acts of trespassers, at least not unless such acts render the running board itself mechanically insecure."

The case before us differs materially from those cases in this, the evidence justifies the finding that one of defendant's servants or

agents negligently left or placed the clinker hook on top of the tender tank in such a position as to render it an element of danger. However, let us assume that the condition created by the tramp in the Slater case and the coal on the engine step in the Reeves case, were caused by some act on the part of the agents and servants of the defendant company, thereby causing injury to one of the employees. Would that have constituted a violation of the Safety Appliance Act, in the Slater case? or, a violation of the Boiler Inspection Act in the Reeves case? We think not. The primary purpose of both the Safety Appliance Act and the Boiler Inspection Act, is to require the railway companies to furnish their employees safe standard equipment, free from mechanical defects. This duty is absolute. The question of reasonable care is immaterial. [Baltimore & Ohio Railroad Co. v. Groeger, 266 U. S. 521; Davis v. Callen, 250 S. W. (Tex.) 305.]

There was much testimony in the case before us, that the proper place to carry the clinker hook was on top of the tender tank, under the step, against the coal board. That this was a safe and suitable place to carry it. The jury might have so found and believed. Yet, under the instruction above quoted, the jury was bound to find for plaintiff, if the clinker hook was misplaced, resulting in plaintiff's injury. Plaintiff, in his brief, has the following to say in reference to the instruction:

"Under the ruling in the Groeger case, supra, it would have been error to submit to the jury the question of whether defendant was required to have hooks on the sill or frame of the tender on which to carry the clinker hook or was required to use any particular appliance or contrivance for the purpose. So, obeying the rule in that case, we simply submitted the question of whether the position of the clinker hook rendered the tender in an unsafe condition and created an unnecessary danger to life or limb. But, had it been permissible to submit the issue, the evidence would have fully warranted a finding by the jury that the tender was in fact unsafe by reason of the failure to provide it with hooks or any other proper means for safely carrying the clinker hook."

Plaintiff has undoubtedly misinterpreted the meaning of the opinion in the Groeger case, supra. It is true, as plaintiff contends, that it would have been error to submit to the jury the question of whether defendant was required to have hooks on the sill frame on which to carry the clinker hook. The Groeger case so holds. However, in the Groeger case the court held it to be a question of fact for the jury to determine, whether the explosion of the Boiler resulted from a defect in the boiler. Evidence of a leak shortly before the explosion, was held sufficient to make a case for the jury on that question. The Groeger opinion and its meaning, on the point be-

fore us, was thoroughly discussed and considered by the Supreme Court of New Hampshire, on a motion for rehearing in the case of Watkins v. Boston & M. Ry. Co., 138 Atl. 1. c. 322. What the court there said is applicable here. We therefore quote:

"The plaintiff's difficulty is with the general Federal rule as to what may be submitted to a jury as evidence of a faulty condition. The cases under the Boiler Inspection Act do not set up any new limitation upon liability for fault. It is true, as the plaintiff contends, that the 'essential and ultimate question—i. e.; whether the boiler was in the condition required by the act'—is one of fact. Baltimore & Ohio Railroad v. Groeger, 266 U. S. 521, 531, 45 S. Ct. 169, 173 (69 L. Ed. 419). The claim that it is therefore one for the jury to decide is subject to the qualification that the *evidence must show a defect* which could be found to render the engine unsafe within the meaning of the act." (Italics ours.)

So in this case in order for plaintiff to recover under the Boiler Inspection Act, there must be evidence from which the jury may find that the tender or some appliance was defective, so as to constitute a violation of the act by defendant. No such question was submitted to the jury. Plaintiff's only evidence of a defect was proof of the failure, on the part of the defendant, to have hooks on the sill of the tender, on which to carry the clinker hook. Defendant contended the proper place for the hook, as above stated, was on top of the tank, under the step, against the coal board. There was much evidence that that was a safe place to carry it, and no evidence to the contrary. The question was not submitted to the jury, however, of whether defendant failed to have the tender properly equipped to carry the clinker hook. The gist of plaintiff's instruction, authorizing a verdict against defendant is, that if the jury found that the servants or agents of defendant company, placed the clinker hook on top of the tender tank in a loose, insecure and unsafe position, so as to render the tender unsafe to operate, resulting in plaintiff's injury, then defendant was liable, not having complied with the Boiler Inspection Act. The instruction does not require the jury to find that there was any defect, or that the tender was not properly equipped. All the jury was required to find was that defendant's servants or agents had misplaced the clinker hook, thereby creating the unsafe condition.

This is not sufficient for a recovery under the Safety Appliance Act, or Boiler Inspection Act. Respondent cites Davis v. Callen, 250 S. W. (Tex.) 305, as an authority, but the liability of defendant in that case was based on a defect in the clinker bar, the defect being the proximate cause of the injury. In Frye v. Chicago, R. I. & P. Ry. Co., 195 N. W. (Minn.) 629, a defect was found in the links of the chain of a coupling pin lifter. To the same effect are the other

cases cited by respondent. The basis of recovery, in all of them, was some mechanical defect in the appliance itself, or a defect in the design, or the construction of the locomotive or tender, which caused the unsafe condition and was the proximate cause of the injury.

The Safety Appliance Act and the Boiler Inspection Act, must be, and have been, liberally construed. That does not mean, however, a construction so as to include cases beyond the plain intent and scope of the act. We hold that the case should not have been submitted to the jury under the Boiler Inspection Act, and that it was error for the court to do so. Plaintiff should be permitted to amend his petition, so as to state a cause of action under the Federal Employers Liability Act. [Castle v. Union Pac. Ry. Co., 166 N. W. (Minn.) 767.]

The second question: did plaintiff's alleged negligence, as a matter of law, bar his claim? Since the case must be retried we will not discuss this question at length. We cannot anticipate what testimony will be offered at a retrial. On the record now before us we hold that plaintiff's negligence, if any, did not, as a matter of law, bar his claim. Under the rules of the defendant company, the agreement of plaintiff and defendant, and the evidence offered with reference to them, the jury might have well found that it was the duty of the defendant to furnish plaintiff, as fireman, also the engineer, an engine and tender fully equipped and ready for service. If it was not so fully equipped and prepared, some agent or servant of the company, not plaintiff, was negligent and derelict in his duty. The cases cited by appellant, Davis v. Kennedy, 266 U. S. 147; Frese v. C. B. & Q. Ry. Co., 263 U. S. 1, are not in point. If the case is retried it should be submitted to a jury in accordance with the rules of law governing the Federal Employers Liability Act, as interpreted by the Federal courts.

For the error indicated the judgment is reversed and the cause remanded. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—Appellant has filed a motion to transfer this case to the Court en Banc, on the ground that a Federal question is involved, "to-wit the construction and application of the Boiler Inspection Act, 45 U. S. C. A. 23 and the Federal Employers Liability Act, 45 U. S. C. A. 51-59." Appellant cites Section 4 of the Amendment of 1890 of Article Six of the Constitution of Missouri. The motion was taken with the case.

This identical question was presented to and disposed of by this court in the case of McAllister v. St. Louis Merchants' Bridge Term. Ry. Co., 25 S. W. (2d) 1. c. 792. On the authority of that case and the reasons there assigned, the motion to transfer is denied.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.