237 S.W.2d 161 (1951)
ABERNATHY
v.
ST. LOUIS-SAN FRANCISCO RY. CO.
No. 42220.
Supreme Court of Missouri, Division 2.
March 12, 1951.
*162 E. G. Nahler, J. L. Homire, C. H. Skinker, Jr., and W. W. Dalton, all of St. Louis, for appellant.
Mark D. Eagleton, Wm. H. Allen, St. Louis, for respondent.
WESTHUES, Commissioner.
Plaintiff Abernathy was a locomotive fireman in the employ of the defendant railroad at Birmingham, Alabama. On March 20, 1948, while on duty he fell off a running board of an engine. He filed suit in the City of St. Louis, Missouri, and a trial resulted in a verdict in his favor in the sum of $85,000. The trial court overruled the railroad's motion for a new trial on condition that plaintiff enter a remittitur in the sum of $40,000. Plaintiff did so and judgment was entered for $45,000. The defendant appealed.
The defendant in its brief states that plaintiff based his cause of action solely upon a violation of the Federal Boiler Inspection Acts, 45 U.S.C.A. § 22 et seq. We shall so treat the case. The defendant says the judgment should be reversed because plaintiff failed to show that his injuries were caused by a violation of the Boiler Inspection Act. Defendant states that if this court should hold plaintiff's evidence sufficient to sustain a verdict under the Act, a new trial should be granted for errors in plaintiff's principal instruction and for the reason that the verdict was so excessive as to indicate passion and prejudice on the part of the trial jury.
The evidence justifies the following statement as to the cause of plaintiff's fall from the engine: Plaintiff while on duty found that the automatic bell-ringer of the engine was not operating efficiently. Plaintiff with a wrench in his hand climbed on the engine and while walking on a running board toward the bell he stepped with his left foot on some foreign object lying on the running board; his left foot slipped forward and was caught under a water pipe which extended partially over the running board. Plaintiff attempted to regain his balance but his right foot slipped off the running board away from the engine and plaintiff fell to the ground. The evidence with reference to the defects claimed by plaintiff showed that on the day plaintiff fell the surface of the running board was slick and that a metal strip at the outer edge of the running board which normally extended above the surface of the board *163 was loose and sagging. It was claimed that because of this strip's being loose and sagging, plaintiff's foot slipped off the running board.
The railroad cited a number of cases to sustain its theory that plaintiff's evidence did not show any defect within the meaning of the Boiler Inspection Act. In Riley v. Wabash Ry Co., 328 Mo. 910, 44 S.W.2d 136, the only defect claimed was a clinker hook which had been left lying upon the tender of an engine. Plaintiff stumbled over the clinker hook and was injured. This court held the case should not have been submitted under the Boiler Inspection Act. In Zachritz v. St. Louis-San Francisco Ry. Co., 336 Mo. 801, 81 S.W.2d 608, the plaintiff attempted to board a moving engine. He claimed that he was caused to fall because of a handrail which was slick and greasy. This court held no defect was proven. It was shown that handholds such as involved in that case were supposed to be smooth. Grease and oil being on the handrail did not constitute a violation of the Safety Appliance and Boiler Inspection Acts, 45 U.S.C.A. §§ 1 et seq., 22 et seq. In Satterlee v. St. Louis-San Francisco Ry. Co., 336 Mo. 943, 82 S.W.2d 69, the court held that a plaintiff to recover under the Boiler Inspection Act must show that the equipment causing the injury was not in proper condition and safe to operate in the service to which it was being put. In other words, there must be a defect of some nature which caused injury. In Harlan v. Wabash Ry Co., 335 Mo. 414, 73 S.W.2d 749, plaintiff fell through an open trap door in the vestibule of a locomotive. This court held that such fact did not constitute a violation of the Boiler Inspection Act. A judgment for plaintiff was affirmed on the theory that the case had been submitted to a jury on negligence under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The last case cited on this point is Ford v. New York, N. H. & H. R. Co., 2 Cir., 54 F.2d 342. In that case, as in the Zachritz case, supra, plaintiff fell because of grease on a handhold and the court held no violation of the Safety Appliance and Boiler Inspection Acts was proven.
In the case before us plaintiff introduced substantial evidence that a metal strip which normally extended above the surface of the running board was loose and sagging. A jury could well find that plaintiff's right foot would not have slipped off the board if the metal strip had been intact. The cases cited and referred to above are not in point. If plaintiff's evidence is to be believed, and a jury did so believe, there was a violation of the Act. Appellant briefed its case as though plaintiff's fall was due solely to plaintiff's stepping upon a foreign object. A jury could well find that such fact was only a contributing cause and if it had not been for the loose "angle iron" or strip plaintiff would not have fallen. We rule plaintiff's evidence sufficient to sustain the verdict of the jury both as to a defect in the appliance and that such fact was a contributing cause to plaintiff's injuries. Eglsaer v. Scandrett, 7 Cir., 151 F.2d 562, loc. cit. 566(2, 3); Bolan v. Lehigh Valley R. Co., 2 Cir., 167 F. 2d 934, loc. cit. 937(8, 9).
The closing part of plaintiff's instruction read as follows: " * * * and you are further instructed that under the law plaintiff did not assume the risk of injury by continuing in said employment and that contributory negligence of plaintiff, if any, is no defense to this case and cannot defeat or affect plaintiff's claim." Appellant says the above portion of the instruction injected into the case wholly extraneous, false and confusing issues. What was really attempted to be accomplished by the instruction was to keep such issues out of the case. The instruction was a correct declaration of the law. Cases cited by appellant are cases in which a defendant by tendered instruction attempted to inject into the case assumption of risk and contributory negligence as a defense. See Young v. Terminal RR Ass'n of St. Louis, Mo.Sup., 192 S.W.2d 402, loc. cit. 405(8), where the court said: "It is contended that the trial court erred in refusing defendant's request for an instruction advising the jury that plaintiff, working in defendant's yard, took upon himself the assumption of all hazards in connection with such work which did not result from *164 defendant's negligence; and directing a verdict for defendant if the jury believed from the evidence that plaintiff's injuries resulted solely from hazards inherent in the work and not as a result of any negligent act of defendant as submitted." The court held such an instruction erroneous because assumption of risk was not a defense in the case. Appellant cited other cases to the same effect but we deem it unnecessary to discuss them. In the circumstances of this case the instruction was not error. Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S.W.2d 163, loc. cit. 168, 169 (7)(8). The point must be ruled against appellant.
Appellant also says that the instruction was not supported by "the pleadings and the evidence, and does not hypothesize a violation of the Boiler Inspection Act * * *." We cannot agree. We find the petition to state in a general way that the locomotive in question and its parts and appurtenances were defective, dangerous and in an improper condition, and were unsafe to operate in the service to which they were put. The petition was sufficient as against a motion to dismiss. The defendant railroad met plaintiff on all issues at the trial by introducing evidence contradicting plaintiff's evidence. The verdict was responsive to the issues tried and therefore appellant cannot complain. On the question of whether the instruction hypothesized facts sufficient to constitute a violation of the Act, we quote the following portion of the instruction: "In this connection, you are further instructed that if you find and believe from the evidence that on the occasion in question the defendant was using its locomotive mentioned in evidence on its line in its active switching service, and if you find that at said time and place there was an automatic air bellringer on said locomotive and that it was not working automatically by air and that the tread surface of the running board on the fireman's side of said locomotive was of smooth and slick metal composition and that there was a branch water pipe running horizontally alongside the boiler and above the running board on the fireman's side of said locomotive and that the bottom side of said branch water pipe was about 8 inches above the tread surface of the said running board and that there was a drain pipe extending vertically downward from the bottom of said branch water pipe and that the bottom of said drain pipe was about 1½ to 2 inches above the tread surface of said running board and that both said branch water pipe and said drain pipe extended 6 to 8 inches out from the side of said boiler and immediately over said running board and that there was a metal support underneath said running board and that the outer edge of said support was sagging below the outer edge of the tread surface of said running board, and if you further find that by reason of the aforesaid conditions, if you so find, said parts and appurtenances of said locomotive were not in proper condition and were not safe to operate in the service to which they were then and there being put and that their employment in the active service of the defendant on the occasion in question unnecessarily imperiled the life and limb of plaintiff, then you are instructed that the defendant violated and disregarded its said duty under the law, * * *." The record contains evidence in support of every fact submitted by the instruction. It is evident that appellant's point is without merit.
Appellant briefed the point that the verdict of $85,000 was so excessive as to indicate passion and prejudice and, therefore, a new trial should be ordered. This question was presented to the trial court. That court ruled against appellant but ordered a remittitur of $40,000. The record does not disclose any occurrence during the trial from which we can conclude that the jury was prejudiced. We have ruled consistently that the amount of the verdict does not necessarily in and of itself indicate passion and prejudice. We therefore defer to the ruling of the trial court. Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. ___, 234 S.W.2d 532, loc. cit. 534(1,2); Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157, loc. cit. 158, 159(2-6).
Respondent in his brief says appellant did not ask this court to order an *165 additional remittitur and, therefore, the sole question for review in the excessiveness of the verdict is whether bias and prejudice tainted the verdict. Appellant in its original brief did not specifically request this court to reduce further the amount of plaintiff's judgment. However, appellant did cite many cases involving excessive verdicts where this court ordered remittiturs. In the reply brief it did specifically ask that if a new trial should be denied, we should order a further remittitur. We have decided to examine the question of whether $45,000 is an excessive amount to allow plaintiff.
Plaintiff at the time of his injury was thirty-nine years of age. In 1947 he earned $3,688.07. He was a healthy and ablebodied man. The injury sustained in the fall from the engine consisted of a compression fracture of the twelfth dorsal vertebra. Dr. Leon Fox, a specialist in orthopedic surgery, who examined plaintiff and X rays of plaintiff's back, testified as follows: "These films revealed a narrowing of the anterior portion of the twelfth dorsal vertebra, which is interpreted as the result of wedging, due to a compression fracture of the body of this vertebra. There was also noticed a narrowing of the fifth interspace, with marked diminution of the width of this interspace and an increase in density of the bodies of the two vertebrae."
Plaintiff was in a hospital in Birmingham, Alabama, for six days where he was provided with a Taylor brace. He has worn this or another brace since his injury, except when in bed. After leaving the hospital, he was in bed at home for about three or four weeks. As mentioned before, he was injured on March 20, 1948. In July he went back to work on appellant's railroad but was forced to quit after eleven days' work. Thereafter he was in the Frisco Hospital in St. Louis for about six weeks. He testified that he has tried to work on several occasions but his back condition would not permit him to continue. He testified that since the injury he has been unable to earn any money.
The evidence as to the permanency of plaintiff's injuries was not very definite. Dr. Fox testified as follows:
"Q. Having in mind his endurance of these injuries over a period of time which is now over two years past, what would you say is the future of this man in so far as future disability and future pain and suffering are concerned? A. I believe this patient has permanent injuries and he will continue to suffer from these injuries to practically the same extent that he is at the present time.
"Q. To what extent do you consider him disabled so far as manual pursuits are concerned? A. I don't think he can ever engage in heavy work or any labor without considerable painstrenuous activity."
Plaintiff cites Tatum v. Gulf, Mobile & Ohio R. Co., 359 Mo. 709, 223 S.W.2d 418, where this court reduced a verdict from $50,000 to $42,500. Tatum's injuries were much more severe than plaintiff's in this case. Tatum suffered a fracture of the pelvis bone and also fracture or compression of the second and fourth lumbar vertebrae resulting in an S-shaped curve of the spine. The broken pelvis caused a deformity and malposition. As to Tatum's ability to work, a doctor testified that he was wholly incapacitated from doing any kind of manual labor then or in the future. The opinion in the Tatum case was written in September, 1949. O'Brien v. L. & N. R. Co., 360 Mo. 229, 227 S.W.2d 690, was decided by this court in March, 1950; Smiley v. St. Louis-San Francisco Ry. Co., 359 Mo. 474, 222 S.W.2d 481, was decided in July, 1949. Plaintiff's injuries in this case are no greater than those of O'Brien nor more than those Smiley suffered. O'Brien's judgment was reduced by this court from $55,000 to $30,000. In the Smiley case this court reduced the judgment from $50,000 to $27,500.
Considering the above-mentioned cases, as well as others, and taking into consideration the continued changes in the purchasing value of the dollar, we deem $35,000 adequate compensation for plaintiff's injuries. If, therefore, plaintiff will *166 within 10 days enter a remittitur in the sum of $10,000, the judgment will be and is hereby affirmed for $35,000 as of the date of the verdict. Otherwise, the cause is reversed and remanded. It is so ordered.
BOHLING and BARRETT, CC., concurs.
PER CURIAM.
The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.
ELLISON, P. J., concurs.
TIPTON and LEEDY, JJ., concur in result.