**Jerry J. CALABRITTO, Plaintiff-Appellee,**

v.

**NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant-Appellant.**

No. 98, Docket 26222.

United States Court of Appeals Second Circuit.

Argued Dec. 7, 1960.

Decided Feb. 21, 1961.

Robert M. Peet, New York City (Edmund J. Moore, New York City, on the brief), for defendant-appellant.

William Paul Allen, New York City, for plaintiff-appellee.

Before CLARK, WATERMAN, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, suing under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, and the Boiler Inspection Act, 45 U.S.C. § 23, recovered a verdict and judgment for $25,000 and costs for the injuries he sustained in the course of his work for defendant as a yard brakeman when he slipped and fell on sand and oil located on the platform of one of defendant's switching engines. Under the court's charge the jury was directed to find for the plaintiff if the defendant had been negligent or if it had failed to keep its locomotives in the safe condition required by the Boiler Inspection Act. Defendant now appeals on the grounds that there was insufficient evidence to support a finding of negligence under the FELA and that the FBIA does not impose liability for dangerous conditions created by the temporary presence of foreign matter on its locomotives.

We conclude that there was sufficient evidence to justify submission of the case to the jury on the issue of negligence. By his own testimony the yard conductor, on discovering plaintiff lying unconscious on the engine platform, noticed that sand and oil were present on

the front end of the deck. Plaintiff testified that he saw sand in the area, and the fireman testified that he saw sand there in making his routine check of the engine prior to the accident. On this record the jury could find that the railroad, through its employees, either knew or should have known that a dangerously slippery condition existed in the area where plaintiff would pass in the course of his duties. Unless there is a complete absence of probative facts to support the conclusion reached, the jury verdict must stand. Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, 88, certiorari denied New York, N. H. & H. R. Co. v. Korte, 342 U.S. 868, 72 S.Ct. 108, 96 L. Ed. 652; Schilling v. Delaware & H. R. Corp., 2 Cir., 114 F.2d 69, 71. The sustained efforts of the Supreme Court majority to preserve the integrity of the jury system, over vigorous dissent that the time taken with these cases was not well spent, show that this verdict is not to be upset. See, e. g., Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 524, 559, 77 S.Ct. 443, 1 L.Ed.2d 493; Gibson v. Thompson, 355 U.S. 18, 78 S.Ct. 2, 2 L. Ed.2d 1.

Defendant's second contention is that the FBIA, 45 U.S.C. § 23, imposes liability only for mechanical or structural defects, and not for dangerous conditions caused by the temporary presence of foreign matter. But the statute itself contains no such limitation, and instead requires all locomotives and their parts and appurtenances to be "in proper condition and safe to operate * * * without unnecessary peril to life or limb." Furthermore, the Supreme Court expressly rejected such a narrow reading of § 23 in Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 487–488, 63 S.Ct. 347, 352, 87 L.Ed. 411.[1]

In the Lilly case the plaintiff had suffered injuries in a fall from the top of a locomotive tender which had become icy in violation of a rule of the Interstate Commerce Commission. Sustaining a jury verdict for plaintiff the Supreme Court said: "The use of a tender, upon whose top an employee must go in the course of his duties, which is covered with ice seems to us to involve 'unnecessary peril to life or limb'—enough so as to permit a jury to find that the Boiler Inspection Act has been violated." 317 U.S. 481, 486, 63 S.Ct. 347, 351. So the use of an engine whose surface has been made slippery by sand and oil may similarly be found by a jury to involve "unnecessary peril to life or limb" in violation of the FBIA.

Defendant contends that the Lilly case authorizes recovery for nonstructural or nonmechanical defects only where the dangerous condition results from a violation of an ICC rule. In Lilly the Court, after rejecting the argument that § 23 did not extend to such defects, referred to certain of the early cases denying liability on which the defendant here also relies,[2] and stated that "[w]hatever else may be said about the cases relied upon by respondent, they are sufficiently distinguishable in that they either did not involve or did not consider Rule 153 or

1. "From various cases denying recovery under the Act respondent attempts to extract a general rule that the Act covers only defects in construction or mechanical operation and affords no protection against the presence of dangerous objects or foreign matter. But there is no warrant in the language of the Act for construing it so narrowly, or for denying the Commission power to remedy shortcomings, other than purely mechanical defects, which may make operation unsafe. The Act without limitation speaks of equipment 'in proper condition and safe to operate * * * without unnec- essary peril to life or limb.' Conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb."

2. Ford v. New York, N. H. & H. R. Co., 2 Cir., 54 F.2d 342, certiorari denied 285 U.S. 549, 52 S.Ct. 405, 76 L.Ed. 939 (grease on locomotive grab iron); Reeves v. Chicago, St. P., M. & O. Ry. Co., 147 Minn. 114, 179 N.W. 689 (coal on engine steps); Riley v. Wabash Ry., 328 Mo. 910, 44 S.W.2d 136 (clinker hook on top of engine tender).

any comparable regulation." Id., 317 U.S. at page 488, 63 S.Ct. at page 352. But the Court also stated that the jury could have found a violation of § 23 in the absence of such a rule. Id., 317 U.S. at pages 486, 489, 63 S.Ct. at pages 351, 352. The requirement of safe equipment is set by the statute, not by the rule.[3] While the Commission has the power to give more definite content to this standard in specific instances by rules, the failure of the Commission so to act does not relieve a carrier of its obligation to meet the statutory requirement of safe equipment as it may be reasonably interpreted by a jury.[4] If the Commission had enacted a rule requiring engine platforms to be kept clear of slippery substances, clearly the jury could have concluded that an engine platform made slippery by sand and oil was in an unsafe condition within the meaning of § 23. The absence of such a rule, which would only be declaratory of common sense, can make no difference to the jury's right to reach such a conclusion. It would be indeed an anomaly to require enforcement of a Congressional mandate for safe railroad equipment to depend upon the action or nonaction of an administrative agency.

We find no persuasive authority since the Lilly case to support the narrow construction of § 23 for which defendant contends. Defendant relies on Raudenbush v. Baltimore & O. R. Co., 3 Cir., 160 F.2d 363, where the Third Circuit, distinguishing Lilly as relying on a Commission rule, held that the requirement of "secure sill steps" in 45 U.S.C. § 11 referred only to mechanical and structural defects, and was not applicable where an employee fell on newly fallen snow. But the applicability of § 23, which had been ruled out of the case by the district court, was not considered on appeal. Furthermore, in a later opinion by the Third Circuit in Terek v. Conemaugh & Black Lick R. Co., 3 Cir., 231 F.2d 564, 567, where plaintiff alleged but failed to prove that he fell on a slippery foreign substance, the court accepted without dispute plaintiff's contention that "the defendant railroad would be responsible [under § 23] for injury caused by a foreign substance on the floor of its locomotive regardless of fault." In that case, as in Delevie v. Reading Co., 3 Cir., 176 F.2d 496, interrogatories were submitted to the jury inquiring whether a slippery foreign substance had made footing unsafe—a factor suggesting that trial courts in the Third Circuit consider such substances as creating liability under § 23. Defendant also relies on Camp v. Atlantic Coast Line R. Co., 251 Ala. 184, 36 So.2d 331, which refused to find liability under § 23 where there was doubt that the fall was caused by grease as alleged and where the grease may well have come from plaintiff's own shoes. Even that case, however, recognized that the Act would be violated if a locomotive were made unsafe "because of the presence of dangerous objects or foreign matter." 251 Ala. 184, 36 So.2d 331, 335.

We think the sounder view is represented by cases holding that dangerous conditions caused by foreign substances give rise to liability under § 23. In Minehart v. Southern Pac. Co., 136 Cal.App. 2d 486, 288 P.2d 999, liability under § 23 was imposed on the authority of Lilly for a locomotive ladder made greasy by oil. In Zumwalt v. Gardner, 8 Cir., 160 F.2d 298, 304, the jury was permitted to find for the plaintiff if it concluded that dirt was present in the equipment controlling the brakes. In Atlantic Coast Line R. Co. v. Sweat, 5 Cir., 183 F.2d 27, § 23 was

3. See Bolan v. Lehigh Valley R. Co., 2 Cir., 167 F.2d 934, 936; O'Brien v. Chicago & N. W. Ry., 329 Ill.App. 382, 68 N.E.2d 638, 646–648.

4. See Delevie v. Reading Co., 3 Cir., 176 F.2d 496, 497; Baltimore & O. R. Co. v. Groeger, 6 Cir., 288 F. 321, 324, reversed on other grounds 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; Richter & Forer, Federal Employers' Liability Act, 12 F.R.D. 13, 47.

violated when a piece of waste in the water tank caused a boiler explosion. In Tisneros v. Chicago & N. W. Ry., 7 Cir., 197 F.2d 466, certiorari denied 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685, the trial court concluded that an icy condition of steps and grab irons could be "an unnecessary peril to life or limb" under § 23, but the court of appeals reversed on another ground without ruling on this issue.

■ It is clear that a permanently slippery surface would constitute unsafe equipment under 45 U.S.C. § 23. Bolan v. Lehigh Valley R. Co., 2 Cir., 167 F.2d 934; Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164. For the reasons stated, we do not think the statute authorizes a different result simply because the dangerous condition is created by the presence of grease and oil.

Judgment affirmed.

WATERMAN, Circuit Judge (concurring).

I concur in the result and join my colleagues in affirming the judgment. In the light of Lilly v. Grand Trunk Western R. Co., 1943, 317 U.S. 481, 487–488, 63 S. Ct. 347, 87 L.Ed. 411, the trial court's charge to the jury with reference to plaintiff's claim of defendant's liability to him under the Boiler Inspection Act, 45 U.S.C.A. § 23 was not erroneous. Until that decision is clarified a trial court is justified in charging the jury that the presence of any unstable foreign substance on the exterior of a locomotive, irrespective of how the substance came to be there, conclusively establishes that the railroad, as when a defective boiler explodes, has negligently violated its duty to its employees of providing them with safe places in which to work.

Like Judge FRIENDLY, I arrive at this result with great reluctance, and if I did not consider ourselves bound by the language in Lilly v. Grand Trunk Western R. Co., supra, I would reverse and remand for a new trial.

FRIENDLY, Circuit Judge (concurring).

The language of the Boiler Inspection Act, 36 Stat. 913, § 2 (1911), 45 U.S.C. A. § 23, does not suggest to me a Congressional purpose to impose on railroads an absolute duty to keep the surfaces of locomotives and tenders as free from foreign matter at all times, as an operating room before surgery. If the Act does this, I see no way of limiting the requirement to such substances as oil and grease; it must extend also to substances as unavoidable in railroad operation as snow and ice. Such a construction means that railroads face an inevitable conflict between the duty thus imposed, carrying the sanction of a $250 penalty for "each and every such violation," 45 U.S. C.A. § 34, as well as of liability to employees, and their duty to render reasonable service to passengers and shippers; if the New Haven chose to regard the former as paramount, there would, I fear, be many occasions during the New England winter when we would be bereft of the presence of our colleagues from Connecticut and Vermont. Neither does anything in the legislative history of the Act afford the slightest basis for such a construction; indeed, it points rather in the opposite direction.[1] If I were free to ex-

---

1. The initial debate on the floor of the House indicated that the legislators were primarily concerned with boiler explosions. Representative Mann, chairman of the House Committee on Interstate and Foreign Commerce, which reported the bill, said "It is the belief of all people concerned, both the railroads and the employees, that the passage of this bill will materially result in the lessening of boiler explosions." 46 Cong.Rec. 2071 (1911). Representative Robinson spoke of accidents caused by "defective boilers," id. at 2072, and Representative Peters of explosions, steam pressure, and the need to inspect boilers from the inside, id. at 2074.

The broadening of the Act in 1915 was recommended by the Senate Committee on Interstate Commerce in a one-page

ercise my own judgment, I should therefore wholly agree with the interpretation given by this Court in Ford v. New York, New Haven & Hartford R. Co., 2 Cir., 1931, 54 F.2d 342, where we affirmed the dismissal of a complaint based on the theory that the mere presence of a foreign substance violated the Safety Appliance and Boiler Inspection Acts.

Against this we now have Lilly v. Grand Trunk Western R. Co., 1943, 317 U.S. 481, 487–488, 63 S.Ct. 347, 87 L.Ed. 411. That opinion seems to me to shift rather uneasily between the extreme position urged by the plaintiff and embodied in the judge's instruction here, and a narrower holding based on Interstate Commerce Commission Rule 153. If that decision were our own, I would limit it to the latter ground, see Urie v. Thompson, 1949, 337 U.S. 163, 191, 69 S.Ct. 1018, 93 L.Ed. 1282, believing that any incongruity in having the standard of liability differ according as a practice with respect to locomotives and tenders was or was not required by a rule of the Interstate Commerce Commission was less undesirable than having the standard differ as between the locomotive and tender on the one hand and rolling stock covered by the Safety Appliance Act on the other, see Raudenbush v. Baltimore & Ohio R. Co., 3 Cir., 1947, 160 F.2d 363, or as between railroad power plants and those of competitive carriers by land and air who are subject to a liability to their employees that is absolute but limited. However, when the precedent is a decision of the Supreme Court, our handling must be more literal; despite my own belief that the result goes beyond any purpose signified by Congress, I think the interpretive scale comes down slightly on the side that the Lilly opinion went

all the way Judge CLARK says. I concur for affirmance solely on that ground; for if the charge with respect to the Boiler Inspection Act was in error, a new trial would be required despite the correctness of the instruction and the adequacy of the evidence under the Federal Employers' Liability Act, United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 1959, 358 U.S. 613, 619, 79 S.Ct. 517, 3 L.Ed.2d 541.

---

report, S.Rep., 63rd Cong., 3d Sess., No. 1068, which said only:

"This measure provides for the inspection of the entire locomotive. Experience has shown that this is necessary and desirable for the proper safeguarding of the lives of those who travel and of those engaged in the operation of locomotives."

The House Report on the 1924 amendment, 68th Cong., 1st Sess., No. 490, reprinted a letter from the Interstate Commerce Commission which spoke in passing of accidents "resulting from the failure of some part of appliance of the locomotive or tender." P. 3. The Senate Report, No. 740, simply reprinted the House report with approval.