**FORD v. NEW YORK, N. H. & H. R. CO.**

No. 99.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Thomas J. O'Neill, of New York City, for appellant.

John M. Gibbons, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Appellant was severely injured on December 22, 1928, while engaged in interstate commerce in a switching movement at Seymour, Conn. He was the conductor of a freight train, and his duty required him to board the moving tender of a locomotive. Liability is sought to be imposed upon the appellee solely upon the claim of a breach of, and a violation by, the appellee of the Safety Appliance and Boiler Inspection Acts (Safety Appliance Act of March 2, 1893, c. 196, § 4, 27 Stat. 531 [45 USCA § 4]; Boiler Inspection Act of February 17, 1911, c. 103, § 2, 36 Stat. 913). The former provides: "Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

The Boiler Inspection Act on March 4, 1915 (chapter 169, § 1, 38 Stat. 1192), and on June 7, 1924 (chapter 355, § 2, 43 Stat. 659 [45 USCA § 23]), was amended. Section 2 of the 1924 act provided that: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the

provisions of sections 28, 29, 30, and 32 and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

The Safety Appliance standards for locomotives, fixed by the Interstate Commerce Commission order of March 13, 1911, require steam locomotives used in road service to have side handholds which, if vertical, must be of clear length equal to the approximate height of the tank, and they are required to be located, if vertical, one on each side of the tender within six inches of the rear.

At the place where appellant was injured, there is a freighthouse, with tracks nearby, running practically north and south. The track immediately to the east of the freighthouse is referred to as the house track, and, at the time, they were working on this track from the southerly end toward the north. The third car in the particular movement was the most northerly one and was to be left at the freighthouse. Appellant gave the signal to back up, and he then started to get on the northerly end of the tender of the engine. He put his foot on the sill step, took hold of the corner grab-iron of the tender with his ungloved hand, and his hand slipped on the handhold. He made a second attempt, to get clear of the building, and a conduit caught his shoulder and turned him around. He says there was grease on the handhold, and identified it as grease coming from the packing engine box referred to as cup grease. He noticed that there was considerable grease on the handhold. At that time the train was moving about seven miles an hour. The appellant's claim is that the grease on the handhold breached the Safety Appliance and Boiler Inspection Acts. If these acts are applicable and were violated, such violation imposes absolute liability upon the employer, and it was error to dismiss the complaint. Seaboard Ry. v. Gerow, 269 U. S. 584, 46 S. Ct. 121, 70 L. Ed. 425; Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284; St. Joseph Ry. v. Moore, 243 U. S. 311, 37 S. Ct. 278, 61 L. Ed. 741; Chicago, B. & Q. Ry. v. U. S., 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582; St. L., I. M. & S. Ry. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; Lehigh V. Ry. v. Beltz, 10 F.(2d) 74 (C. C. A. 2).

There is no explanation as to how the grease came to be placed upon the handhold; but there is testimony that the locomotive and tender were inspected that morning and that grease was placed in the grease cups underneath the tender, and the inference is indulged in, that the workman who did this in some way placed the grease upon the handhold.

We think the Safety Appliance and Boiler Inspection Acts have no application under these circumstances. When the carrier complied with the requirement of the Interstate Commerce Commission order by having the handholds and maintained them in good repair, they were for the purpose of the statute in proper condition and safe for operation. Erie R. R. v. Lindquist, 27 F.(2d) 98 (C. C. A. 3); Lehigh & N. E. Ry. v. Smale, 19 F.(2d) 67 (C. C. A. 3). Having made the tender safe to operate, if later it became unsafe by putting grease on the handhold, even if such was negligently caused, it is not a violation of the statutory obligation of the appellee. The tender was lawfully equipped with proper equipment by way of handholds, which was an absolute duty imposed by statutory law. The act of putting grease thereon later may have been a violation of the relative duty imposed by general law upon the employer. But counsel has insisted upon resting his case solely upon the claim of violation of the statutory law. If during the operation the safety appliance required by the act was rendered temporarily unsafe by reason of the grease placed thereon, this is not a condition which brings it within the purview of the act. Fredericks v. Erie R. R., 36 F.(2d) 716 (C. C. A. 2); B. & O. R. R. v. Hooven, 297 F. 919 (C. C. A. 6).

It was not the intent of Congress to make the railroad company responsible for grease on the handhold, imposed as an absolute obligation. Congress intended to and quite properly imposed absolute liability upon the railroad company for proper railroad equipment and safety appliances, in the construction and maintenance of locomotives and tenders. The Federal Employers' Liability Act (chapter 149, § 1, 35 Stat. 65 [45 USCA § 51]), makes express reference to cars, engines, and appliances, but, in order to recover under this act, it is necessary for a plaintiff to prove negligence. Under the Safety Appliance and Boiler Inspection Acts, it is not necessary to prove negligence, but failure to comply with the requirements of the act implies negligence. Texas & P. Ry. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874. If the appellant's theory were accepted to

impose liability, it would also modify the requirements of the Federal Employers' Liability Act (45 USCA §§ 51–59) so as to establish negligence for a plaintiff's recovery thereunder. A railroad company can be required to equip its cars with necessary safety appliances, but it cannot be held responsible for every careless act.

An examination of the debates in Congress on the passage of these acts, shows no intention by Congress to impose civil liability for a condition occurring during the operation of the train which does not affect the construction and maintenance as required by the Safety Appliance Act. 61st Congress, 2d Session, Senate Documents, 446; 52d Congress, vol. 23, Congressional Record, p. 5925; volume 24, pp. 1273–1287; Senate Committee Report, vol. 24, Congressional Record, pp. 1246–1251.

Since counsel for the appellant insisted upon oral argument, and now rests his case entirely upon the application of these statutory enactments, it becomes unnecessary for us to examine the civil liability which might exist under the Federal Employers' Liability Act (45 USCA §§ 51–59) and the general law.

Judgment affirmed.