**Jerry E. COLLINS, Appellant,**

v.

**SOUTHERN PACIFIC COMPANY,**
**Appellee.**

**No. 16956.**

United States Court of Appeals
Ninth Circuit.

Feb. 6, 1961.

Thomas C. Ryan, Ryan & Ryan, San Francisco, Cal., for appellant.

R. Mitchell S. Boyd, G. Blandin Colburn, Jr., Dunne, Dunne & Phelps, San Francisco, Cal., for appellee.

Before HAMLIN and MERRILL, Circuit Judges, and JAMESON, District Judge.

HAMLIN, Circuit Judge.

Jerry E. Collins, appellant herein, filed an action in the United States District Court for the Northern District of California against the Southern Pacific Company, a corporation, appellee herein. The complaint was in two counts. The first cause of action was brought under the Federal Safety Appliance Act, 45 U.S.C. A. §§ 4 and 11,[1] and alleged that appellant was ascending a ladder on a certain box car when he slipped on grease which was on one of the grab irons on said ladder; that he fell to the ground and received the injuries described in the complaint; and that his injuries were proximately caused because appellee used and hauled in interstate commerce the box car in question which was not provided with secure grab irons, contrary to the provisions of 45 U.S.C.A. §§ 4 and 11.

The second cause of action alleged negligence upon the part of the appellee under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51.[2]

At the beginning of the trial, upon appellee's motion, the district court dis-

1. "Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." 45 U.S.C.A. § 4.
  " * * * [A]ll cars having ladders shall also be equipped with secure hand-holds or grab irons on their roofs at the tops of such ladders: * * * ". 45 U.S.C.A. § 11.

2. "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole

missed the first cause of action. The trial then proceeded upon the second cause of action before a jury which rendered a verdict in favor of the appellee. The jurisdiction of the district court was by reason of 45 U.S.C.A. §§ 4, 11 and 51. A timely appeal was taken by appellant to this court, in which appellate jurisdiction is predicated upon 28 U.S.C.A. § 1291.

As stated by appellant, the sole question involved in this appeal is whether the presence of grease or oil on a grab iron constitutes a violation of 45 U.S.C.A. §§ 4 and 11. Appellant's notice of appeal was limited to the order of the district court dismissing the first cause of action.

Appellant made an offer of proof, as to the first cause of action, in which he contended that a grab iron with oil or grease on it is not a secure grab iron as required by the Safety Appliance Act. No contention was made at any time that the grab iron in question was in any way structurally defective. However, appellant contends that the word "secure" means the same as the word "safe", and that therefore, under the Safety Appliance Act, there is a positive duty on the part of the railroad to provide a safe grab iron.

Appellant relies mainly upon the case of Lilly v. Grand Trunk Western R. R., 1943, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411, and on Minehart v. Southern Pacific Co., 1955, 136 Cal.App.2d 486, 288 P.2d 999. Both of these actions were

brought for a violation of the Boiler Inspection Act, 45 U.S.C.A. § 23.[3] This act provides in part that it shall be unlawful for a carrier to use a locomotive unless said locomotive and its parts are in proper condition and safe to operate. In the Lilly case, the evidence showed that the presence of ice on the locomotive rendered it unsafe, and in the Minehart case it was held that the presence of grease upon the steps of the locomotive made the locomotive unsafe and was a violation of the Boiler Inspection Act.

The Safety Appliance Act does not contain the same language found in the Boiler Inspection Act, but as has been indicated above requires that the grab irons be "secure".

While this particular question has not been passed upon as far as we know in this circuit, a similar question was presented to the Second Circuit in Ford v. New York, N. H. & H. R. R., 1931, 54 F.2d 342. In that case the evidence showed that the appellant therein started to get on a tender; he took hold of the corner grab iron with his gloved hand; and his hand slipped on the handhold. He claimed that there was grease on the handhold and contended that there was a violation of the Safety Appliance Act and the Boiler Inspection Act.[4] The district court dismissed the action, and on appeal the court of appeals for the Second Circuit said:

> "The tender was lawfully equipped with proper equipment by way of handholds, which was an ab-

---

or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its * * * equipment. * * * "

3. It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb * * *."

4. The holding that there had been no violation of the Boiler Inspection Act may well be open to question in view of the decisions in Lilly v. Grand Trunk Western R. Co., 1943, 317 U.S. 481, 63 S.Ct. 347, and Minehart v. Southern Pacific Co., 1955, 136 Cal.App.2d 486, 288 P.2d 999. That branch of the case, however, is not applicable to the case at bar, for the Boiler Inspection Act applies only to locomotives and tenders. The holding of the Ford case that the Safety Appliance Act had not been violated when there was grease on a grab iron was approved by the Supreme Court in Atchison, T. & S. Fe R. R. v. Scarlett, 1937, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748.

solute duty imposed by statutory law. The act of putting grease thereon later may have been a violation of the relative duty imposed by general law upon the employer. But counsel has insisted upon resting his case solely upon the claim of violation of the statutory law. If during the operation the safety appliance required by the act was rendered temporarily unsafe by reason of the grease placed thereon, this is not a condition which brings it within the purview of the act."[5]

The Third Circuit has considered a similar question in Raudenbush v. Baltimore & O. R. R., 3 Cir., 1947, 160 F.2d 363, 365. In that case one of the questions answered by the court was the following: "Was the railroad company guilty of a violation of the Safety Appliance Act in failing to make the sill of the gondola car 'secure' by reason of its failure to remove any ice or snow therefrom?" The court answered the question by holding that the presence of snow on the sill of a gondola car "did not constitute a violation of the Act insofar as related to the duty to maintain 'secure' sill steps."

The United States Supreme Court, in Atchison, T. & S. Fe R. R. v. Scarlett, 1937, 300 U.S. 471, 57 S.Ct. 541, 543, had occasion to consider the question of whether the presence of a round brace rod immediately behind a ladder on a box car was a violation of the Safety Appliance Act. The Supreme Court reversed the decision of the California Supreme Court, and said:

"We do not see how it reasonably can be said that the brace rod constitutes a part of the ladder. In itself, it was a contrivance separate and distinct from the ladder, designed and used for a purpose entirely apart from the use of that appliance. The right of recovery, if any, must, therefore, rest upon the effect of the near proximity of the ladder to the rod, neither being in itself defective. The law to be applied to that situation is the commonlaw rule of negligence, and not the inflexible rule of the Safety Appliance Act; * * *"

Congress has seen fit to use language in the Boiler Inspection Act, which applies to locomotives, different from that in the Safety Appliance Act, which applies to cars. Under the Boiler Inspection Act the requirement is that the "locomotive, its boiler, tender, and all parts and appurtenances thereof," be "in proper condition and safe to operate * * *." Under the Safety Appliance Act the requirement is that the cars have "secure grab irons"; that they be "equipped with secure sill steps * *"; and that they have "secure ladders and secure running boards" and "secure handholds or grab irons on their roofs * * *"

This distinction in the requirements of the two acts appears to us to be reasonable. Under practically all circumstances a locomotive is in the personal charge and custody of the railroad, and an opportunity is provided for the maintenance of it in a safe condition. This may not be true in the case of a car which is used on many lines by many different railroads, and which may have been in the custody of consignees. It would appear to be unreasonable under such circumstances that the railroad should at all times and under all circumstances be under a positive duty to maintain its cars in a safe condition. Of course, under the general provisions of the Federal Employers' Liability Act, the railroad may be held responsible for negligence in the maintenance of its cars; but the question of whether in this case the railroad was or was not negligent has been determined by the jury in favor of the railroad, and no appeal has been taken from such finding.

5. 54 F.2d at page 343.

We agree with the holdings in the Raudenbush, and Scarlett cases, supra, and hold that in this case the district court correctly dismissed the first cause of action in plaintiff's complaint.

Judgment affirmed.