512 F.2d 1348
 168 U.S.App.D.C. 108
 Wayne L. LaMADE, Appellant
v.
Alfred WILSON, Defendant and Third-Party Plaintiff.
PROVIDENCE HOSPITAL, a corporation
v.
McDONALD'S CORPORATION and McDonald's of Forest Heights,
Maryland, Inc., Third-Party Defendants.
 No. 73-1979.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 6, 1975.
Decided May 19, 1975.
 
 Barry J. Mace, Washington, D. C., with whom Earl H. Davis, Washington, D. C., was on the brief, for appellant. William Reback, Washington, D. C., also entered an appearance for appellant.
 Howard C. Donahue, for appellee Wilson.
 James A. Welch, Washington, D. C., for appellee Providence Hospital.
 Before WRIGHT and LEVENTHAL, Circuit Judges, and DAVIS,* Judge, United States Court of Claims.
 PER CURIAM:
 
 
 1
 In October, 1969, appellant, Wayne L. LaMade, while in the employ of McDonald's, sustained a severe injury when his left eye was struck with the paper work hat of another employee. He consulted appellee Dr. Wilson, who prescribed several medicines, including a "pain killer" known as Ophthaine. Treatment by Dr. Wilson continued until December 1969, at which time both appellant and Dr. Wilson considered the wound healed, appellant's sole complaint being of "some slight pain," with the eye "sensitive to light." On January 1, 1970, plaintiff filed a workmen's compensation claim in the state of Maryland.
 
 
 2
 In March, 1970, appellant began to experience difficulty with the eye, including discomfort, light sensitivity and "crusting." After emergency hospital treatment he visited Dr. Wilson on March 9, 1970. Dr. Wilson conducted an examination, and determined there was an ulceration of the cornea. He prescribed medication directed towards a diagnosed bacterial infection and again prescribed Ophthaine to minimize the pain. After eight office visits between the 9th and 21st of March, appellant was admitted to appellee Providence Hospital under Dr. Wilson's care. Dr. Wilson again prescribed Ophthaine, among other medications. At Dr. Wilson's instructions, the nurses left a bottle of Ophthaine at appellant's bedside. Appellant was able to lift his eye patch and insert the drops whenever he felt intense pain. Appellant stayed at Providence Hospital from March 21 to March 30, when Dr. Wilson made arrangements to have him transferred to the Washington Hospital Center for further consultation and treatment. He stayed there from March 30 to April 16, 1970, during which time he was under the care of Dr. Jerome Goldman.
 
 
 3
 In this civil action, appellant claimed that Dr. Wilson was negligent in prescribing and permitting the frequent use of Ophthaine in view of the indication in the Physician's Desk Reference that prolonged use of the medication "may possibly delay wound healing" and that "(s)oftening and erosion of the corneal epithelium have been reported" in connection with the use of the drug. Appellant also claimed negligence on the part of the Providence Hospital on the theory that its nurses had a duty to question the physician concerning his instruction that medication of this nature be left at the appellant's bedside. The jury returned a verdict in favor of both appellees.
 
 
 4
 Appellant raises a number of issues on appeal from that verdict, but our disposition of the case is governed by the improper way in which the issue of the previously filed workmen's compensation claim was injected into the proceedings below. Counsel for Dr. Wilson stated in his opening remarks that a workmen's compensation claim was filed on appellant's behalf in Maryland in 1970. Appellant's trial counsel immediately objected: "I do not think the workmen's compensation should be in here." The judge overruled the objection. Defense counsel continued, stating that there had been two hearings in Maryland on July 10 and July 21, 1970; that at that time appellant introduced testimony through Dr. Goldman that the condition of appellant's eye as of July 1970 was related directly to the accident in which he was struck by the hat; that an award was made by the State of Maryland on the basis of that testimony; and that shortly after the Maryland hearing appellant "turned around ... and filed a lawsuit" based on Dr. Wilson's alleged negligence in March 1970, thus "completely chang(ing) the whole atmosphere of the case." (J.A. 25-6). At closing argument Dr. Wilson's counsel, over objection by appellant's counsel, was permitted to argue to the jury that:
 
 
 5
 This case was tried in July of 1970. It was given a full hearing in July of 1970 and Mr. LaMade got what he asked for there, that he be entitled to these benefits because this injury that he has is related to the McDonald's accident and not to any Ophthaine.
 
 
 6
 We have tried the identical case in front of you ladies and gentlemen. (J.A.328)
 
 
 7
 In addition to the opening and closing statements, the defense counsel also referred to the workmen's compensation hearing in his cross-examination of appellant and of Dr. Goldman. He elicited that Dr. Goldman had testified at the hearing. The cross-examination purported to elicit how Dr. Goldman had previously testified. The record before us is muddy. Taking it in the sense most favorable to the defendant, Dr. Goldman appears to have related that at the prior hearing he testified that appellant, as of July, 1970, "had this syndrome known as recurrent epithelial erosion which involves the left cornea," and that, since appellant had sustained an injury from the hat in October and had also experienced delayed healing as attested to by Dr. Wilson, he felt "there was nothing that I could reasonably be certain what transpired in March was probably related to his previous injury (sic)." (J.A. 185-86)
 
 
 8
 In our view, there was prejudicial error due to the way in which defense counsel, with the judge's approval, called attention to the workmen's compensation claim, hearing, and award. This case is governed by the line of cases holding that the admission of evidence concerning an injured party's receipt of collateral social insurance benefits constitutes reversible error, because it involves a substantial likelihood of prejudicial impact and the possibility of its misuse by the jury outweighs its probative value.[1]
 
 
 9
 Defense counsel was free to seek to impeach Dr. Goldman by reference to his prior inconsistent testimony. Such impeachment is entirely proper and may be put before the jury, with opportunity given to the witness to reconcile what seem to be diverging statements. But this kind of impeachment must be carried out in such a way as to limit the reference to the prior proceeding to bring out what is material (the inconsistent testimony) without eliciting what is prejudicial (that a workmen's compensation claim had been filed and that an award had been made). In the case before us, neither defense counsel nor the trial judge manifested the requisite prudence or sensitivity. Rather, it was hawked to the jury that moneys had already been received by appellant for what was described as being the same claim.
 
 
 10
 The case is flawed by the substantial possibility that the jury was influenced by prejudicial evidence.[2] The case will be reversed and remanded for a new trial.
 
 
 11
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 293(a)
 
 
 [1]
 See Tipton v. Socony Mobil Oil Co., Inc., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963); Eichel v. New York Central Railroad Co., 375 U.S. 253, 255, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); Caughman v. Washington Terminal Co., 120 U.S.App.D.C. 217, 345 F.2d 434 (1965)
 For the general principle that evidence may not be admitted where prejudicial impact outweighs probative value, see, e. g., Rule 403, Federal Rules of Evidence (P.L. 93-595, approved January 2, 1975); United States v. Bussey, 139 U.S.App.D.C. 268, 271, 432 F.2d 1330, 1333 (1970); Luck v. United States, 121 U.S.App.D.C. 151, 155-57, 348 F.2d 763, 767-69 (1965).
 
 
 [2]
 Counsel for both appellees seek affirmance on the basis of lack of adequate evidence of negligence or proximate cause. The record reflects a determination by the trial judge that the evidence on these matters was sufficient to go to the jury. We need not consider how the matter would stand if the judge had vacated a verdict for plaintiff on the ground that the evidence was insufficient, on either negligence or proximate cause, to sustain a verdict. The flaw that Wilson's counsel injected precluded an effort even to solicit such a ruling by the trial judge. We do not think it an appropriate use of appellate judicial energies to canvass the record on points like these in the first instance. Counsel for appellee Providence Hospital did not initiate the error, but it could have profited from the prejudice, so its judgment must also be reversed