Edward G. SHEEHY, Plaintiff–Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION CO., Defendant–Appellee.

No. 78–2814.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 18, 1980.

Decided Nov. 3, 1980.

Sam Rosenwein, Daniel C. Olney, Los Angeles, Cal., argued, for plaintiff–appellant; Olney, Levy, Kaplan & Tenner, Los Angeles, Cal., on brief.

Joseph Cummins, Cummins, White & Breidenbach, Los Angeles, Cal., for defendant–appellee.

Before KENNEDY, SKOPIL and POOLE, Circuit Judges.

SKOPIL, Circuit Judge:

## INTRODUCTION

This action was filed under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., and under the Federal Safety Appliance Act (FSAA), 45 U.S.C. §§ 1–21. The district court withdrew the FSAA action from jury consideration. The jury

found against the plaintiff on the FELA action.

Two questions are presented on appeal: (1) whether the trial court committed reversible error in allowing the defendant to refer to the amount of collateral disability benefits that the plaintiff was receiving and (2) whether the trial court erred in taking the FSAA action away from the jury.

## FACTS

Sheehy was employed as a brakeman for Southern Pacific (Southern) and was injured when he attempted to mount a ladder on the side of a moving boxcar and fell. He lost a portion of his right foot and suffered other disabilities.

Sheehy alleged in the FELA action that Southern was negligent by failing to provide a safe place to work and a safe path to conduct switching operations. He alleged in the FSAA action that Southern committed a violation by maintaining a bent and therefore defective sill step.

Prior to trial, Sheehy's attorney moved for an order excluding any references to Sheehy's collateral benefits. The trial court ruled that evidence of the amount of the benefits was admissible on the issue of Sheehy's motivation to resume working and on malingering, but that the source of the benefits and the term "pension" could not be mentioned. Sheehy's counsel objected to this determination but was unsuccessful.

At trial, several witnesses testified that the sill step was bent. Other witnesses testified, however, that they inspected the sill step after the accident and found it to be in perfect condition. Photos of the step were introduced as evidence.

Several physicians were called to testify on the psychiatric and psychological rehabilitation of the plaintiff. A part of that testimony included an evaluation of Sheehy's motivation to return to work. In apparent response to evidence that Sheehy was not a malingerer and did not lack motivation to work, defense counsel asked Sheehy on cross–examination: "Now, you

have been receiving about $800 a month, haven't you?" Sheehy responded, "In disability benefits, yes, sir." Sheehy's counsel did not object to the question. On redirect examination Sheehy's counsel disclosed the source of the income. Sheehy testified that he had contributed to a retirement program and that if he began working again, he would lose the benefits. He also testified that he was receiving $225 from disability insurance. Reference to disability benefits was again made during defense counsel's summation to the jury.

During the course of settling on jury instructions, the court concluded that there was insufficient evidence for a jury to determine that a violation of the FSAA occurred. All proposed instructions on the FSAA were eliminated.

The jury returned a verdict in favor of Southern.

## DISCUSSION

### I.

In *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the Supreme Court held that in an action under the FELA, evidence of disability pension payments was inadmissible either as bearing on the extent or duration of the injury or to show a motive for not returning to work. The Court stated:

> "In our view, the likelihood of misuse by the jury [of such evidence] clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits ... were considered as evidence of malingering by an employee asserting a claim under the [FELA]". 375 U.S. at 255, 84 S.Ct. at 317.

Courts have consistently interpreted *Eichel* to preclude admission of evidence of collateral benefits whether such evidence is

presented during the liability or damages phase of the trial. *E.g., Riddle v. Exxon Transportation Co.*, 563 F.2d 1103, 1107 (4th Cir. 1977); *Fuhrman v. Reading Co.*, 439 F.2d 10, 14 (3d Cir. 1971); *Schroeder v. Pennsylvania Railroad Co.*, 397 F.2d 452, 456–57 (7th Cir. 1968); *Caughman v. Washington Terminal Co.*, 345 F.2d 434, 435–36 (D.C. Cir. 1965).

Southern acknowledges the restrictive language of *Eichel* but argues that the case's holding has been displaced by Federal Rule of Evidence 403. Southern argues that the rule was intended to give great discretion to the trial judge and to eliminate any strict exclusionary rules. This argument was rejected, however, in *Riddle v. Exxon Transportation Co.*, 563 F.2d 1103 (4th Cir. 1977). That court found that nothing in the new federal rules of evidence authorized departure from the *Eichel* holding. 563 F.2d at 1107.

▆▆▆▆ Rule 403 does provide great discretion to trial judges to make evidentiary rulings. The trial court's determination under the rule is discretionary and cannot be overturned on appeal except for abuse of discretion. *E.g., Miller v. Poretsky*, 595 F.2d 780, 783 (D.C. Cir. 1978). Nevertheless, the discretion normally applicable to admit all relevant evidence of collateral benefits is greatly limited in FELA cases. Rule 403 is designed as a guide for the handling of situations in which no specific rules have been formulated. *See Advisory Committee's Note, Fed.R.Evid.* 403. In *Eichel*, the Supreme Court balanced the probative value of such evidence against any unfair prejudice and determined that in such cases, the value is greatly outweighed by possible prejudice.

Southern argues that *Eichel* is distinguishable since in this case it was the plaintiff's counsel who "opened the door" by introducing evidence on the issue of Sheehy's motivation to return to work. Southern relies on *Gladden v. P. Henderson & Co.*, 385 F.2d 480 (3d Cir. 1967) *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968), for the proposition that once the issue of collateral benefits is raised

by the plaintiff, the defendant has an opportunity to challenge it through impeachment or credibility evidence. Our review of the record, however, shows that Sheehy did not "open the door". The decision to allow the evidence to be submitted was made by the judge as a result of the prehearing motions. No comparative prehearing determination was made in *Gladden*. The decision to open the issue of collateral benefits cannot be attributed to Sheehy but rather to the court's ruling on the pretrial motions.

In *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963), the Court found evidence of collateral benefits to be inadmissible but recognized that in a proper case an appropriate instruction would cure the error. The trial court in that case gave no cautionary instructions so the Court did not determine what would be appropriate. The Fourth Circuit, interpreting *Tipton*, held that to cure the error the trial judge must promptly strike the evidence and admonish the jury to disregard the matter. *Riddle v. Exxon Transportation Co.*, 563 F.2d 1103 (4th Cir. 1977). The verdict returned must not appear to have been adversely affected by the error. 563 F.2d at 1108.

▆▆▆▆ In this case, the verdict could very well have been adversely affected by the alleged error since the plaintiff recovered nothing. In addition, the trial judge did not strike the evidence and did not admonish the jury to disregard it. The limiting instruction that was given simply informed the jury that it could not reduce the award of damages by the amount of collateral benefits. We find this insufficient to cure the possible error of allowing the evidence to be introduced.

Federal Rule of Evidence 103(a)(1) requires that a timely objection or motion to strike appear of record and state the specific ground for objection to admission or exclusion of evidence. Southern correctly notes that no objection was made at the time the evidence was admitted. Southern argues that failure to make timely objection waives the right. We reject that argument. Sheehy's attorney objected during the pretrial arguments to the court's ruling

that the evidence was admissible. The objection at that time was on record and at least under these circumstances was adequate to preserve the right on appeal. *Cf. Collins v. Wayne Corporation*, 621 F.2d 777 (5th Cir. 1980) (objections to an adverse ruling on a motion *in limine* were held to be inadequate to meet the requirements of Rule 103(a)(1) when counsel failed to object at the time of cross-examination).

We hold that admission of evidence of collateral benefits in this action constitutes reversible error. *See LaMade v. Wilson*, 512 F.2d 1348 (D.C. Cir. 1975); *Schroeder v. Pennsylvania Railroad Co.*, 397 F.2d 452 (7th Cir. 1968). The pitfalls described in *Eichel* are not avoided by permitting evidence of the amount but not the source of such collateral benefits.

## II.

■ The Federal Safety Appliance Act (FSAA), 45 U.S.C. § 11, requires that all railroad cars be equipped with "secure" sill steps. A Department of Transportation regulation, 49 C.F.R. § 231.1(d)(ii), specifies that sill steps cannot be placed more than four inches inside the face of the side of the boxcar. The trial court determined that in the absence of evidence showing that the step was bent more than four inches, no violation of the Act could be found.

■ A jury question is presented under the FSAA if it can be reasonably concluded that the equipment failed to operate properly causing plaintiff's injury. *Trout v. Pennsylvania Railroad Co.*, 300 F.2d 826, 828 (3d Cir. 1962). Our review of the record disclosed little evidence showing that the step was bent. We are, however, unable to agree with the trial court's reasoning for removing the question from the jury.

Courts have held that materials such as snow, ice, oil or grease on steps or ladders do not render them unsecure. *Collins v. Southern Pacific Co.*, 286 F.2d 813 (9th Cir.) *cert. denied*, 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961); *Raudenbush v. Baltimore and Ohio R. Co.*, 160 F.2d 363 (3d Cir. 1947). On the other hand, worn and slick and bent steps do present a jury question on "secureness". *Davis v. Reynolds*, 280 F. 363

(4th Cir.) *cert. denied*, 258 U.S. 627, 42 S.Ct. 383, 66 L.Ed. 798 (1922); *Allen v. Union Railroad Co.*, 162 F.Supp. 635 (W.D.Pa. 1958). In *Atchison, T. & S.F. Railroad v. Scarlett*, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748 (1937), the Supreme Court found that a railroad fully discharged its duties under the FSAA by complying with applicable regulations. The judgment of a trial court and jury as to what is safe cannot be substituted for the regulatory standards. *Atchison* involved a challenge, however, to the relative placement of ladders and structural features of the car. There was no claim that any of the equipment was defective.

We find that the regulation in question was intended to define the proper physical location of the sill step on a car. A violation of the Act can occur even if the step is not bent four or more inches, since other factors may lead a jury to find that the step was not secure. *See Davis v. Reynolds*, *supra*. On retrial, the trial court may still decide whether sufficient evidence is submitted to allow a reasonable jury to reach a conclusion. The court should not, however, treat the regulation as determinative that a violation cannot be found.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.