**Dwight A. NASH, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY CO., Defendant.**

**No. Civ.A. 1:98CV51.**

United States District Court, W.D. Virginia, Abingdon Division.

March 6, 2000.

---

Willard J. Moody, Sr., John Covington Henry, Portsmouth, VA, for plaintiff.

Wade W. Massie, Abingdon, VA, for defendant.

## MEMORANDUM OPINION and ORDER

GLEN M. WILLIAMS, Senior District Judge.

### I. Facts and Procedural History

This action was filed by the plaintiff Dwight A. Nash ("Nash") on March 23, 1998 for injuries allegedly sustained while in the course of performing his duties as an employee of the defendant, Norfolk and Western Railway CO. ("N & W").[1] The plaintiff avers that N & W was negligent and failed to comply with the provisions of the Federal Employer's Liability Act, 45 U.S.C. §§ 51, *et seq.* (1994) ("FELA"), the Federal Safety Appliance Act, 45 U.S.C. §§ 1–16 (1994) ("SAA"), and the rules and regulations of the Occupational Safety and Health Administration. (Pl.'s Compl. ¶¶ 8, 9.)

The court adopts and incorporates by reference the facts set forth in its Memorandum Opinion and Order regarding the estoppel issues addressed by the defendant and the plaintiff's Motion in Limine to exclude the waiver of a formal investigation hearing ("waiver").[2] The issue presently before this court is whether the defendant's Motion for Summary Judgment should be partially granted as it pertains to the plaintiff's SAA claim. 49 U.S.C. §§ 20301 *et seq.* (1994).[3]

Specifically, the plaintiff claims that the defendant violated 49 U.S.C. § 20302 by not providing secure sill steps, secure hand holds, secure grab irons, and secure ladders. Nash claims that these appliances (i.e., sill steps, hand holds, etc.) were not secure due to the presence of an inordinate amount of coal dust and chemicals. (Pl.'s

---

1. The defendant, Norfolk and Western Railway Company ("N & W") is now Norfolk and Southern Railway Company, but for the sake of avoiding any confusion, Norfolk and Southern will be addressed in this Memorandum Opinion as either N & W or the defendant.

2. The defendant filed a Motion for Summary Judgment contending in part that the plaintiff is estopped from asserting a claim against N & W for injuries allegedly sustained on December 16, 1996. This Motion for Summary Judgment was based on the fact that the plaintiff signed a waiver stating that he had made conflicting statements about his accident and that no injuries occurred on railroad property. The defendant's position relied upon two separate theories of estoppel, judicial and equitable. Conversely, the plaintiff filed a Motion in Limine seeking to exclude as evidence the waiver in question. The plaintiff asserted that this waiver is unreliable under Fed.R.Evid. 403, and is a "device" in violation of 45 U.S.C. § 55 (1994). In a previous opinion this court denied both the defendant's Motion for Summary Judgment in regards to the estoppel arguments and the plaintiff's Motion in Limine.

3. The plaintiff alleges in his Complaint that this action, in part, arises under 45 U.S.C. §§ 1–16. However, the plaintiff later asserts through his expert witness August Westphal and by reference in the plaintiff's Memorandum in Opposition to Motion for Summary Judgment that the SAA claim is based upon a violation of 49 U.S.C. § 20302 (1994).

Mem. in Opp'n to Def.'s Mot. for Summ.J. at 15.) As a result of this alleged violation, the plaintiff contends that on December 16, 1996, while working on railroad property, he slipped off a train car and fell approximately ten feet to the ground, resulting in a broken left wrist, bruised thumbs, and a bruised hip.

While the defendant acknowledges that Nash's Complaint claims that he was required to use dangerous and defective equipment that was covered with coal, coal dust, and other substances, the defendant contends that Nash failed to properly identify any specific SAA violation in his complaint. (Def.'s Mot. in Supp. of Mot. for Summ.J. at 15.) Regardless of whether that is true, the responsibility of preventing potentially dangerous foreign objects from settling on safety appliances is a negligence question under FELA, 45 U.S.C. § 51, not the SAA.

## II. Legal Discussion

The purpose of the SAA, as it relates to this case, is to provide *secure* appliances, for use by railroad employees. The pertinent part of the SAA states that a railroad carrier may use a railroad vehicle (i.e., car, locomotive, tender, etc.) only if it is equipped with:

> *secure* sill steps ... *secure* ladders and running boards when required by the Secretary of Transportation, and if ladders are required, *secure* handholds or grab irons on it roof at the top of each ladder ... [and] *secure* grab irons or handholds on its ends and sides ...

49 U.S.C. § 20302(a)(1)(B)(C) and (a)(2) (emphasis added).

It is clear from the SSA's language that the intent of such legislation is to provide railroad workers with secure appliances. The term "secure" should not necessarily be equated with the word "safe." The court in *Collins v. Southern Pac. Co.*, 286 F.2d 813, 815 (9th Cir.1961), held that the SAA imposes a duty on a railroad carrier to maintain "secure" appliances. *See also Ford v. New York, N.H. & H.R. Co.*, 54 F.2d 342, 343 (2nd Cir.1931) (holding that the railroad carrier's duty under the SAA was met by providing lawfully equipped handholds on the train car, not by cleaning accumulated grease off of the handholds). Congress purposefully distinguished this duty to provide secure appliances on railroad vehicles from that of a similar railroad safety measure, the Boiler Inspection Act, which requires all locomotives to be "in proper condition and *safe* to operate". *Collins*, 286 F.2d at 815 (emphasis added). Had Congress intended to apply the same safety standard enumerated in the Boiler Inspection Act to appliances it would seem logical that the same term would have been used in both acts. The inference to be drawn from the use of two discernable terms is that there is a fundamental difference between secure equipment on railroad vehicles and locomotives that are safe to operate. Thus, the language of these two acts demonstrates the legislative intent to differentiate between "secure" and "safe." While the railroad carrier may ultimately be held responsible for FELA violations for negligently maintaining the railroad cars, it is not an appropriate SAA determination. *Id.*

This distinction between secure equipment and safe conditions is further clarified in that the SAA refers only to the mechanical and structural nature of equipment, not the accumulation of foreign substances on such equipment. *Raudenbush v. Baltimore & O.R. Co.*, 160 F.2d 363, 366 (3rd Cir.1947). That is, a railroad carrier is required to equip its vehicles with the appropriate equipment and make sure their structural and mechanical integrity are not compromised. *Id.* Therefore, worn, slick, and bent appliances, like those discussed in *Sheehy v. Southern Pac. Transp. Co.*, 631 F.2d 649, 653 (9th Cir. 1980), are issues of "secureness," because they relate to the mechanical and structural nature of the appliances themselves.

While not specifically addressed by the Fourth Circuit, other courts have common-

ly held that slippery sill steps, ladders, running boards, and handholds caused by "materials such as snow, ice, and oil and grease does not render them insecure." *Id.; Ford,* 54 F.2d at 343 (finding that a grease-coated handhold was secure under the SAA); *Raudenbush,* 160 F.2d at 366 (holding that a snow covered sill step did not constitute an unsecured appliance); *Collins,* 286 F.2d at 815 (holding that a grab iron was secured regardless of the presence of grease on the grab iron).

This court sees no compelling reason to extend the scope of the SAA to cover slippery conditions caused by coal and chemical accumulation on safety appliances. As previously stated, these potentially dangerous conditions should be analyzed according to a negligence standard as provided by FELA. The plaintiff's request to broaden the application of the SAA would transform all FELA cases into SAA cases. This is manifestly not what Congress envisioned when enacting the SAA. In fact, there is no indication that Congress intended to impose strict liability for "condition[s] occurring during the operation of the train which does not affect the construction and maintenance as required by the Safety Appliance Act." *Ford,* 54 F.2d at 344.

In the case at bar, the plaintiff has filed a FELA claim against N & W, and will therefore still have the opportunity to address the alleged dangerous conditions presented by the ladders and steps that the plaintiff contends caused his accident. Accordingly, this court finds that the plaintiff's SAA claim is unwarranted, and will partially grant the defendant's Motion for Summary Judgment as it pertains to the plaintiff's SAA claim.

### ORDER

For the reasons set forth in the Memorandum Opinion above, this court holds that the defendant's Motion for Summary Judgment regarding the plaintiff's Federal Safety Appliance Act claim is hereby GRANTED.

The Clerk is directed to send certified copies of this Memorandum Opinion and Order to all counsel of record.